## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **STEVEN FUTTERKNECHT,** | Civ. No. 2:14-7395 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **MARY THURBER, J.S.C., *et al.*,** | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

*Pro se* Plaintiff Stephen Futterknecht brings this action against Hon. Mary Thurber, J.S.C., Hon. Peter Melchionne, J.S.C., Hon. Ronny Jo Siegal J.S.C., Hon. Donald Venezia, J.S.C., and Hon. Gary N. Wilcox, J.S.C. ("Judicial Defendants") in their individual and official capacities; the Superior Court of New Jersey, Bergen Vicinage ("BCSC"), and the Bergen Vicinage Probation Division ("Judiciary Defendants"); Gov. Chris Christie in his individual and official capacities; the State of New Jersey; his ex-wife, Leslie Cavrell; and her attorney, Matthew Tsocanos. Plaintiff alleges violations of the Racketeer Influenced Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 241, 1581 and 1589, and 42 U.S.C. §§ 1983, 1985, and 1994.

This matter comes before the Court on a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by Judicial and Judiciary Defendants. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

### I.    BACKGROUND

Plaintiff's allegations arise out of divorce proceedings that took place before various Judicial Defendants who preside over the BCSC's Family Division. The following facts are as alleged in the Complaint.

In May 2012, Plaintiff and his ex-wife, Defendant Leslie Cavrell, agreed to a divorce settlement following pre-trial negotiations with Judicial Defendants. Compl. ¶ 34. Prior to the settlement, Defendant Judge Melchionne discussed the proceedings with each party's attorney, instructing them that if they did not reach an agreement immediately, he

would start the trial, force Plaintiff to pay costs, and set Plaintiff's alimony and child support payments at $12,500 per month. *Id.* at ¶ 35. Following this discussion, Cavrell's attorney, Defendant Matthew Tsocanos, threatened Plaintiff with potential incarceration if he would not settle. *Id.* Plaintiff subsequently agreed to pay $12,500 a month in alimony and child support. *Id.* at ¶ 35.

Plaintiff owns a business and claims that following the divorce settlement, his revenues declined substantially. *Id.* at ¶ 37. Furthermore, per the terms of the divorce settlement, Plaintiff was forced to surrender all of his assets to his ex-wife. *Id.* at ¶ 48. Consequently, Plaintiff struggled to pay support, and in April, 2013, he filed a motion to have his payments reduced. *Id.* at ¶ 38.

Plaintiff was granted a hearing before Judge Melchionne, which occurred on July 18, 2013. *Id.* At the hearing, Judge Melchionne refused to allow testimony from Plaintiff's accountant, and found that Plaintiff's financial documents did not establish an inability to continue making payments. *Id.* Judge Melchionne ordered Plaintiff to pay $25,000 within two weeks. *Id.* Plaintiff was unable to make the ordered payment, and was subsequently arrested and jailed. *Id.* at ¶ 39. He was then placed on house arrest with electronic monitoring. *Id.* at ¶ 40.

Plaintiff appeared at several enforcement hearings, which were prompted by repeated phone calls from his ex-wife to the Bergen County Probation Department. *Id.* at ¶ 61. At an enforcement hearing on September 11, 2013, Defendant Judge Wilcox heard testimony from Bergen County Corrections Officer Daniel Marro. *Id.* at ¶ 41. Officer Marro expressed his belief that Plaintiff was capable of making the support payments. *Id.* On October 9, 2013, Plaintiff appeared at another enforcement hearing before Judge Wilcox. *Id.* at ¶ 44. Plaintiff was declared indigent and appointed an attorney. Plaintiff stated that he had paid $6,000 in support over the previous 30 days, which was the maximum he could afford. *Id.* Judge Wilcox ordered Plaintiff into work release subject to a $25,000 support payment. *Id.* Plaintiff appeared before Judge Wilcox once again on October 23, 2013. *Id.* at ¶ 46. Judge Wilcox denied Plaintiff's request for an ability-to-pay hearing and again remanded Plaintiff to work release subject to a payment of $25,000. *Id.*

In December 2013, Plaintiff filed a second motion to reduce his support payments. *Id.* at ¶ 57. At a hearing before Defendant Judge Thurber, Plaintiff testified that he was paying as much support as he could and that he could not afford the monthly amount that he had previously agreed to pay. *Id.* at ¶ 59. Plaintiff also testified that he had been searching for new jobs in his field, but that he had not been hired because he lacked a college degree. *Id.* at ¶ 58. Plaintiff presented business records to support his motion, but Judge Thurber declined to appoint a forensics expert and the records were never examined. *Id.* at ¶ 59. On June 9, 2014, Judge Thurber released an order in response to Plaintiff's motion. *Id.* at ¶ 64. Judge Thurber found that Plaintiff had missed a support payment and

issued a bench warrant for his arrest. *Id.* Plaintiff alleges that Judge Thurber's order was inconsistent with the transcript of the hearing. *Id.*

On June 30, 2014 Plaintiff filed a civil complaint in the BCSC, naming Judges, Melchionne, Thurber, and Wilcox, the BCSC, and the State of New Jersey as defendants (the "State Complaint"). The State Complaint accuses Defendants of violating Plaintiff's constitutional rights.

At another hearing on July 17, 2014, Defendant Judge Siegal attempted to appoint counsel without conducting an indigency hearing. *Id.* at ¶ 72. Plaintiff objected to representation and refused to proceed. *Id.* at ¶¶ 73-74. Plaintiff alleges that Judge Siegal threatened him with contempt and instructed sheriff's officers to "get in [his] face" so that he would comply. *Id.* Plaintiff subsequently amended his State Complaint to add Judge Siegal as a defendant. Def.'s Ex. B, ECF No. 11-6.

On October 10, 2014, Plaintiff's State Complaint was dismissed with prejudice. Plaintiff then filed the instant action on November 25, 2014. Plaintiff alleges numerous instances in which each Defendant violated his constitutional rights over the course of his divorce and support proceedings. He also claims that Defendants violated federal RICO statutes by forming an enterprise that extorted money from him. Finally, Plaintiff alleges that Defendants forced him into peonage by remanding him to work release after he failed to make support payments. Plaintiff seeks damages, as well as declaratory and injunctive relief.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). Moreover, where the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

## III.   DISCUSSION

Plaintiff's Complaint asserts eight causes of action, which the Court will construe as eight counts:

(1) Count One: Violation of federal RICO statutes;
(2) Count Two: Violation of constitutional rights under 42 U.S.C. § 1983;
(3) Count Three: Conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3);
(4) Count Four: Conspiracy against rights pursuant to 42 U.S.C. § 241;
(5) Count Five: Deprivation of rights under color of law, pursuant to 42 U.S.C. § 242
(6) Count Six: Peonage, in violation of 42 U.S.C. § 1994 and
(7) Count Seven: Peonage, in violation of 18 U.S.C. § 1581; and
(8) Count Eight: Forced Labor, in violation of 18 U.S.C. § 1589.

The Judicial and Judiciary Defendants move to dismiss all Counts.  As explained below, the Court abstains from exercising jurisdiction over the claims for declaratory and injunctive relief against the Judicial Defendants and finds that the remainder of the Complaint fails to state a claim under Rule 12(b)(6).[1]  The Court will address Counts Four through Eight first, and then analyze the remaining three Counts as they relate to each Defendant.

### A.   Counts Four and Five

Plaintiff alleges that Defendants violated 18 U.S.C. §§ 241 and 242, both of which are criminal statutes that do not provide a basis for civil liability.  *Watson v. Washington Twp. of Gloucester Cnty. Pub. Sch. Dist.,* 413 F. App'x 466, 468 (3d Cir. 2011).  Consequently, Plaintiff is unable to state a claim for relief.  The Court will thus dismiss Counts Four and Five.

### B.   Counts Six and Seven

42 U.S.C. § 1994 prohibits peonage, i.e. any "acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced … the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation."  The statute was intended to abolish laws

---

[1] A court may *sua sponte* dismiss claims against nonmoving defendants "where nonmoving defendants are in a position similar to that of a moving defendants or where the claims against all defendants are integrally related."  *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993).

permitting or enforcing involuntary labor in exchange for the liquidation of debts. *Whitner v. Davis*, 410 F.2d 24, 30 (9th Cir. 1969). Similarly, 18 U.S.C. § 1581 punishes anyone who "holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning him to a condition of peonage." In this case, Plaintiff was detained and remanded to work release, but he was never forced to work. On the contrary, Plaintiff claims that he cannot make his support payments because of his inability to find work. Consequently, Plaintiff has failed to state a claim for peonage. Further, given the nature and history of the statutory prohibitions on peonage, and the context in which Plaintiff claims they were violated, the Court finds that it would be impossible to amend the complaint in order to state a claim under Counts Six and Seven. Thus, the Court will dismiss Counts Six and Seven.

### C.  Count Eight

Plaintiff alleges Defendants violated 18 U.S.C. § 1589, which prohibits forced labor. A defendant violates § 1589 if he "intends to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm … that would compel someone in her circumstances to continue working to avoid that harm." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011). The drafter's intent was to combat human trafficking. *Id.* Here, Plaintiff has not alleged that any Defendant intended to cause him serious harm, or that he was compelled to work to avoid serious harm. Moreover, given the nature of the statute, the Court finds that the Complaint cannot be amended to successfully state a claim under Count Eight. Consequently, the Court will dismiss Count Eight.

### D.  Counts One, Two, and Three

#### i.  Judicial Defendants

The Court now addresses Plaintiff's claims against Judicial Defendants in Counts One, Two, and Three. At the outset, the Court notes that the federal RICO statutes do not provide a private right of action for injunctive relief. *Curley v. Cumberland Farms Dairy, Inc.*, 728 F. Supp. 1123, 1137-38 (D.N.J. 1989). Thus, Plaintiff's claim for injunctive relief under RICO in Count One will be dismissed. Moreover, the Court abstains from exercising jurisdiction over Plaintiff's claims for declaratory and injunctive relief, and it finds that Plaintiff's claims for money damages are barred by the doctrine of judicial immunity.

#### 1.  Younger *Abstention*

The Court finds that the facts of this case implicate the doctrine of *Younger* abstention. This doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, (1982). Following *Younger v. Harris*, 91 U.S. 37 (1971), a District Court must abstain from exercising jurisdiction over claims for equitable relief

when litigation would interfere with "state civil proceedings involving orders in furtherance of the state courts' judicial function." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014). The Supreme Court has indicated that the doctrine applies only to claims for equitable relief. S*ee Marran v. Marran*, 376 F.3d 143, 154-55 (3d Cir. 2004).

Abstention is appropriate only if "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010). And even where all three elements are satisfied, a court should not abstain if the plaintiff establishes either that "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist … such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989).

Abstention is appropriate in this case because Plaintiff is involved with ongoing proceedings related to his child support and alimony obligations. *See Anthony v. Council*, 316 F.3d 412, 420 (3d Cir. 2003) (finding that child support payments constitute "an open case that will not terminate until the child support order is finally discharged"). Thus, federal litigation will interfere with state civil proceedings involving orders related to child support and alimony. Further, Plaintiff's suit implicates an important state interest because "New Jersey has an overriding interest in ordering, monitoring, enforcing and modifying child support obligations." *Id.* (finding that the second prong of the *Younger* test was satisfied in a suit against the presiding judges of several child support contempt hearings). Finally, the BCSC provides Plaintiff with a "continuing, open and available forum to raise any issues" related to his child support and alimony hearings. *See id.* at 422 (noting that, by law, child support hearings can be appealed in New Jersey's state courts). In particular, state courts have concurrent jurisdiction over claims under civil RICO and Sections 1983 and 1985. *See Haywood v. Drown*, 556 U.S. 729, 731 (2009); *Tafflin v. Levitt*, 493 U.S. 455, 455 (1990); *Bennun v. Bd. of Governors of Rutgers, State Univ. of New Jersey*, 413 F. Supp. 1274, 1279 (D.N.J. 1976).

Moreover, none of the above-described exceptions apply to this case. Regarding the first exception, Plaintiff alleges that his ex-wife initiated several support hearings in order to harass him. Plaintiff also claims that he was the victim of a conspiracy by the state judiciary to extort money from child support defendants in order to obtain federal money. However, these assertions are conclusory. *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000) ("Mere conclusory allegations of bias are insufficient to overcome *Younger*."). The Complaint does not plead facts that suggest Plaintiff's ex-wife had any motive other than a desire to collect the support she was owed, nor does it support a plausible inference that Judicial Defendants presided over Plaintiff's hearings in bad faith. Regarding the second exception, the Court finds that Plaintiff will not likely suffer an irreparable harm

because he has already had an opportunity to raise his claims in state court.  *See Anthony*, 316 F.3d at 424 (noting courts have only applied this exception when "extraordinary circumstances" have prevented plaintiffs from bringing claims in state court).  Thus, Plaintiff's claims against Judicial Defendants for declaratory relief in Count One and for declaratory and injunctive relief in Counts Two and Three will be dismissed.

### 2.  *Judicial Immunity*

Defendants argue that Plaintiff's claims against the Judicial Defendants are barred by the doctrine of judicial immunity.  Judges are immune from suits for damages arising from the performance of their duties – even when erroneous or malicious – unless they lack jurisdiction.  *See Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006).

Plaintiff seeks compensatory and punitive damages from Judicial Defendants based on their conduct while presiding over Plaintiff's divorce, child support, and alimony proceedings.[2]  Consequently, Plaintiff's claims against Judicial Defendants are predicated on judicial acts.  Moreover, the Complaint contains no factual allegations suggesting that Judicial Defendants lacked jurisdiction.  Therefore, the Court will dismiss Plaintiff's claims for damages against Judicial Defendants in Counts One, Two, and Three.

### ii.  **Judiciary Defendants and the State of New Jersey**

Next, the Court addresses Plaintiff's claims against Judiciary Defendants and the State of New Jersey in Counts One, Two, and Three.  The Court finds that these claims are barred by the doctrine of sovereign immunity.  The Eleventh Amendment prohibits federal courts from hearing a suit brought against a state by one of its own citizens.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). Even when the state is not named as a party, the Eleventh Amendment bars suits when the state is the true party in interest. *Chisolm v. McManimon*, 275 F.3d 315, 322 (3d Cir. 2001).  Thus, sovereign immunity also extends to state agencies and state officials acting in their official capacity. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989).

States may waive their sovereign immunity by consenting to a suit in unequivocal terms.  *Pennhurst*, 465 U.S. at 99. Similarly, Congress may abrogate sovereign immunity by legislation, provided the relevant statute's legislative history contains an "unequivocal expression of congressional intent." *Id.*

Here, there is no indication that New Jersey has consented to Plaintiff's suit.  And Congress did not expressly abrogate sovereign immunity when it passed Sections 1983 and 1985, *see Will*, 491 U.S. at 66; *Shine v. Merenda*, 586 F. App'x 95, 97 (3d Cir. 2014) (affirming dismissal of Section 1985 claim as barred by sovereign immunity), or the federal

---

[2] Plaintiff never appeared before Judge Venezia.  Instead, Plaintiff's claims against Judge Venezia arise from a YouTube video in which Judge Venezia states that the "Constitution is suspended in his [sic] court," and "I make the rules up as I go."  Compl. ¶ 108.

RICO statutes, *see Prod. & Leasing, Ltd. v. Hotel Conquistador, Inc.*, 709 F.2d 21, 22 (9th Cir. 1983); *Fiore v. Kelly Run Sanitation, Inc.,* 609 F. Supp. 909, 912 n.1 (W.D. Pa. 1985). Further, both BCSC and the Bergen County Probation Division are immune from suit under the Eleventh Amendment. *See Gencarelli v. Superior Court of New Jersey*, No. 04-3332, 2005 WL 1490590, at *4 (D.N.J. June 22, 2005) (holding that because any judgment against it would be paid by the state treasury, the Bergen County Probation Department is protected by the Eleventh Amendment); *Johnson v. State of N.J.,* 869 F. Supp. 289, 297 (D.N.J. 1994) (holding that sovereign immunity extends to the New Jersey Superior Court). Therefore, Counts One, Two, and Three against Judiciary Defendants and the State of New Jersey will be dismissed.

### iii.   Remaining Defendants

Finally, the Court addresses Plaintiff's claims against Gov. Christie, and Defendants Cavrell and Tsocanos in Counts One, Two, and Three.

With regards to Gov. Christie in his official capacity, following *Younger*, the Court abstains from exercising jurisdiction over Plaintiff's claims for declaratory and injunctive relief. Further, sovereign immunity bars claims against state officials acting in their official capacity, therefore Plaintiff's claims against the Governor in his official capacity in Counts One, Two, and Three will be dismissed.

Additionally, Plaintiff's claims in Counts One, Two, and Three against Gov. Christie in his individual capacity, Defendant Cavrell, and Defendant Tsocanos will be dismissed for failure to state a claim under Rule 12(b)(6).

### 1.   Count One

As previously explained, private persons are not entitled to injunctive relief for violations of the federal RICO statutes. Thus, the Court will dismiss Plaintiff's claims for injunctive relief in Count One as to all Defendants. Further, Plaintiff has failed to state a RICO claim against Gov. Christie in his individual capacity, Defendant Cavrell, or Defendant Tsocanos.

To establish a cause of action under the federal RICO statutes, a plaintiff must plead (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A pattern of racketeering activity requires at least two predicate acts of racketeering, which are listed in 18 U.S.C. § 1961(1). *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989).

Here, Plaintiff asserts that all Defendants committed numerous predicate acts, including extortion, kidnapping, harassment, mail fraud, wire fraud, and assault. Compl. ¶ 138. However, these claims are not supported by any factual allegations. Instead, Plaintiff has pled facts describing divorce settlement negotiations and the judicial

enforcement of missed support payments. Plaintiff has simply labeled these proceedings criminal. Consequently, all claims in Count One against Defendants Cavrell and Tsocanos and the Governor in his individual capacity will be dismissed.

### 2. Count Two

With regards to Count Two, 42 U.S.C. § 1983 imputes civil liability on a defendant who deprives another of his or her civil rights under color of law. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1264 (3d Cir. 1994). Accordingly, Section 1983 claims must be brought against state actors. *See Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999).

Plaintiff fails to state a claim against Defendants Cavrell and Tsocanos because they are private individuals. *See id.* Thus, the Court will dismiss the claims against Defendants Cavrell and Tsocanos in Count Two.

The Complaint also alleges that Governor Christie, acting in his individual capacity, deprived Plaintiff of his constitutional rights. To state an individual capacity claim under Section 1983, a plaintiff must establish a defendant's personal involvement in the alleged violation. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Establishing personal involvement requires allegations of "personal direction" or "actual knowledge and acquiescence." *Id.*

The Complaint alleges that the Governor violated Section 1983 because he possessed "specific knowledge" that Plaintiff's constitutional rights were being violated at the hands of Judicial Defendants, yet he refused to investigate or remedy the situation. Compl. ¶ 107. Yet, because the Complaint does not assert any factual basis for the Governor's knowledge or acquiescence with regards to Plaintiff's alleged deprivation of rights, it does not support a plausible inference that the Governor violated Section 1983. Consequently, Count Two against the Governor in his individual capacity will be dismissed.

### 3. Count Three

Moving to Count Three, to establish a cause of action under 42 U.S.C. § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997), *as amended* (May 15, 1997). Thus, Plaintiff must allege that Defendants invidiously discriminated against him due to his

membership in an objectively identifiable class.  *Farber v. City of Paterson*, 440 F.3d 131, 135-36 (3d Cir. 2006).   Although Plaintiff's Complaint briefly alludes to gender discrimination,[3] it does not allege facts suggesting that an invidious, discriminatory animus based on gender, or any other objective class distinction, motivated any of the Defendants' acts.   Therefore, Count Three will be dismissed as to Gov. Christie in his individual capacity, Defendant Cavrell, and Defendant Tsocanos.

Finally, the Court finds that amendment of the Complaint would be futile.  Despite filing a 70-page Complaint, Plaintiff has provided not even a scintilla of factual support for his numerous claims.  Further, the Complaint is based largely on fantastic and delusional scenarios.   For instance, Plaintiff alleges that Judicial Defendants are engaged in a conspiracy designed to increase the amount of child support collected so that the Judicial Defendants can receive larger pensions.  Compl. ¶¶ 30-32.  Thus, the Court will dismiss the Complaint with prejudice.  *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (holding that "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee"); *Mecca v. U.S. Gov't*, No. 06-3492, 2006 WL 2927157, at *2 (E.D.N.Y. Oct. 4, 2006) *aff'd*, 232 F. App'x 66 (2d Cir. 2007) (dismissing "fantastic and delusional" claims with prejudice).

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE**.  An appropriate order follows.

_____
/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 29, 2015**

---

[3] Plaintiff alleges that pictures hanging on the walls of Bergen County Probation Division offices are discriminatory due to references to "deadbeat dads," Compl. ¶ 152, and he seeks a declaration affirming the "male gender class" as an "EQUAL PROTECTION [sic]" class that is entitled to "heightened protection" under various constitutional amendments. *Id.* at ¶ 217.